IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| United States of America, | ) | Criminal No.: 4:15-cr-00714-RBH |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Thurman Lowery, Jr. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion to suppress. [ECF #97]. Following a hearing held on August 25, 2016, the Court took this motion under advisement. As is discussed more fully below, having considered the pleadings, the filings of the parties, the testimony of the witnesses, the exhibits admitted into evidence, and the arguments of counsel, the Court issues the following Order.

## Background

Defendant Thurman Lowery, Jr. seeks suppression of evidence seized pursuant to a state search warrant at a hotel room located at an America's Best Value Inn in Horry County, South Carolina. On August 5, 2015, Defendant Agent C. White sought a search warrant to search a hotel room after a controlled purchase between a confidential informant (the "C.I.") and the Defendant, and the C.I. reportedly told Agent White that there was a scheduled purchase of narcotics to occur in a room occupied by Defendant. [ECF #97, p. 1]. As a result of this search, Agent White seized three cell phones, 460 wax paper slips with a brown powder substance, and a green leafy substance. [ECF #97, p. 3]. Defendant believes the search is illegal because he alleges it was supported only by a "bare bones" affidavit with no information concerning the reliability of the confidential information and did not provide the issuing judge with a substantial basis for determining the existence of probable cause, the good faith exception stated in *United States v. Leon*, 468 U.S. 897 (1984) is inapplicable, and the

search warrants are defective in that there is some question as to when the search was conducted in relation to when the search warrant was actually executed. Defendant attached two exhibits, both search warrants, to his motion to suppress. Exhibit "A" references a search warrant for a search that occurred in the early morning hours of August 6, 2015 at the same hotel as the search in question. This search did not result in the seizure of any items. Exhibit "B" includes the search warrant that is the subject of this motion.

On August 25, 2016, the Parties came before the Court for a hearing. At that hearing, the government called Agent White to testify. He testified that during the course of a state drug investigation, a C.I., fitted with audio and video recording devices, engaged in a controlled drug purchase from Defendant. This particular C.I. had been used on August 4, 2015 for a controlled purchase from Defendant. Prior to this, the C.I. had been used on one other occasion for controlled buys from another party. On August 5, 2015, the C.I., fitted with audio and video surveillance device, made a controlled buy from Defendant in a hotel room. Agent White testified that he then sought a search warrant of the hotel room on August 5, 2015, the same night as the controlled drug purchase. Within the text of the search warrant affidavit, Agent White did not specifically mention the reliability of this C.I. because of the quick execution of the warrant; however, he testified that he gave supplemental verbal testimony to the judge upon presentation of the search warrant application. Agent White testified that upon arrival at Judge Chris Arakas' residence, he again gave verbal testimony regarding the basis for probable case, in addition to the testimony about the contents of his affidavit and what had happened earlier with respect to the drug buy. Agent White testified that the warrant was signed around 9:34 p.m.

Also attached to Defendant's motion as Exhibit A is the search warrant related to the second search that occurred the same evening as the first search. Agent White testified that he returned to Judge

Arakas' residence close to midnight on August 5, 2015, to request this search warrant. By the time Judge Arakas executed that document, it was around midnight.

For his part, Judge Arakas testified much like Agent White that the first search warrant, Exhibit B, was obtained on August 5, 2015, and the second warrant, Exhibit A, sometime in the early morning hour of August 6, 2015. He further testified that Agent White explained to him verbally, as part of the basis for the no-knock search warrant in Exhibit B, and as stated in the affidavit, that Defendant had a propensity for violence, has had weapons charges, and was believed to have a firearm during drug transactions. When questioned by defense counsel regarding the fact that the date on Exhibit B next to his signature appears to suggest it was signed August 6, 2015, which is the day after Agent White testified that he executed the search, Judge Arakas testified that Agent White did in fact request the search warrant on August 5, 2015 and Judge Arakas further stated he writes the number "5" in such a way that it appears to look like the number "6."

**Discussion**

The Fourth Amendment governing search warrants provides, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend IV. When deciding whether to issue a warrant, a magistrate's task includes making a practical, common-sense decision as to whether, in considering the totality of the circumstances, there is a fair probability that the contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A magistrate's determination of probable cause is given great deference by reviewing courts. *Id.* at 236. This Court finds that the under the totality of the circumstances, sufficient probable cause existed to issue the search warrant attached to the motion as Exhibit B.

Defendant argues in his motion that the only facts justifying the search were "an unidentified informant" who had told Agent White that Mr. Lowery was inside a hotel during a time when drugs were present. [ECF #97, p. 2]. Defendant further argues that the affidavit application did not include any information suggesting the C.I. was reliable. [ECF #97, p. 2]. The Court does not agree with Defendant that based on the facts in this case, probable cause was lacking for the search warrant. The information set forth in the affidavit itself was enough to support probable cause for the issuance of the search warrant. While Defendant may argue that this was a "bare bones" search warrant affidavit, it simply was not.

The affidavit did not indicate that this was simply a controlled buy with a C.I. and Defendant. Instead, it indicated that the C.I. had made controlled buys from Defendant, and Agents "wired the informant with an audio/video recording device" and "*[w]hile under constant surveillance by Agents*, the C.I. met with Thurman Lowery." The affidavit indicated the controlled purchase took place while under surveillance by law enforcement due to recording devices used during the controlled purchase at the hotel room with Defendant. The controlled buy was corroborated due to the recording surveillance. There are ample facts contained within the affidavit to support a determination of probable cause, but even if there were not, there would certainly be enough information with the oral supplemented information given to the state court magistrate by the officer. Law enforcement listened and observed the controlled buy taking place in the hotel room via recording devices, according to the affidavit.

Both Agent White and Judge Arakas testified that upon presentation of the warrant application, Agent White provided oral testimony that included information about the confidential informant. Quite the contrary from acting as a "rubber stamp," as alleged by Defendant," Agent White testified at the

hearing that he initially spoke with Judge Arakas over the phone and told him what probable cause he associated with the application for the search warrant. He then went to meet with Judge Arakas at his residence, and gave further testimony regarding the information provided by the C.I. *See United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) (discussing a warrant applicant where the individual requesting the warrant gave oral testimony elaborating upon the facts in the affidavit, and finding that probable cause existed to issue the warrant). Agent White testified he was able to corroborate the drug sales, in addition to the fact that the C.I. made contact with Defendant for a drug sale, and the items turned over to investigators by the C.I. included narcotics. This Court finds the testimony provided by Judge Arakas and Agent White to be credible. Furthermore, as discussed at the hearing, the C.I. wore a recording device during the drug transaction; thus, the police were able to monitor the drug transaction. In considering the totality of the circumstances, there was sufficient probable cause to support the decision to issue the warrant.[1]

Nor does this Court find compelling Defendant's argument that the warrant was defective because the date appears to be different from August 5, 2015, the date of the search. Defendant argues that the date of June 6, 2014 typed on the cover sheet of the warrant application, and the fact that it appears that the issuing judge signed the document on 8/6/2016 at 9:34 p.m. renders the warrant and subsequent search invalid. At the hearing, Agent White, who prepared the warrant application,

---

[1] This Court also acknowledges that the good faith exception espoused in *United States v. Leon*, 468 U.S. 897 (1984) would apply. The exception dictates that the fruits of a search will not be suppressed when the officer's reliance on the warrant is "objectively reasonable." *Leon*, 468 U.S. at 922. Here, the police were privy to specific information about the drug buys, including where and when they took place. The detailed information that Agent White received regarding these drug buys was then relayed to the magistrate. This Court believes Agent White's reliance on the search warrant would be "objectively reasonable" under these set of facts. Further, under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if "the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926.

indicated that the date on the cover page was a typographical error likely committed because he was using a prior warrant application as a "go by." He testified that he prepared the search warrant and went to seek Judge Arakas' signature on August 5, 2015. Judge Arakas testified that cover pages are not a necessary part of the application, thus he does not usually review that page when considering a warrant application. Regardless, Defendant's counsel conceded that the cover sheet had no bearing on the warrant application and was not a basis to grant the motion. In fact, the magistrate judge credibly testified that he may not even look at the cover sheet and many warrant applications do not even have a cover sheet.

With respect to execution of the warrant application itself, in addition to Agent White's testimony that he prepared the application and went before Judge Arakas to get approval on August 5, 2015, Judge Arakas also testified that he executed the search warrant attached as Exhibit B on August 5, 2015. Specifically, Judge Arakas testified that he has "horrific" handwriting, and how he writes the numeral five (5) often looks like the numeral six (6). He clearly testified that he signed the warrant application on August 5, 2015 at 9:34 p.m. Search warrants which are issued by state magistrates and executed by state officers are examined in this Court to determine only whether they violate the Constitution. *United States v. Shields*, 978 F.2d 943 (6th Cir. 1992). Even assuming that Judge Arakas wrote a "6" instead of a "5," errors regarding an incorrect date of a warrant application have not rendered other warrants invalid. *See U.S. v. Waker*, 463 F. Supp. 2d 348, 353 (W.D.N.Y. Nov. 1, 2006) (finding that a warrant with the incorrect date of April 30, 2004 instead of 2005 was an insignificant Scrivener's error). Furthermore, this Court finds compelling the testimony of both Agent White and Judge Arakas explaining the alleged date inaccuracy on the warrant. Despite the fact that the date could be confused as August 6, 2015, this Court finds that Judge Arakas' explanation of his sloppy

handwriting, accompanied with the testimony that the presentation of this warrant application happened on the evening of August 5, 2015, to be credible.

Regardless of an error[2] in the date, or it being a 5 or a 6, is not really the issue. The critical question and issue is did the officer submit the warrant request *before* he executed the search warrant or *after* the search. The officer's testimony was credible in this regard that he submitted it before the search was conducted and the Court finds further that the warrant was supported by probable cause based on the totality of the circumstances.

## **Conclusion**

The Court has thoroughly reviewed the entire record, including the motion to suppress and corresponding response. For the reasons stated above, Defendant's motion to suppress [ECF #97] is **DENIED.**

**IT IS SO ORDERED.**

Florence, South Carolina
August 30, 2016

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge

---

[2] In *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the Supreme Court refused to suppress evidence from a search based on a clerical defect made by the issuing judge contained in a search warrant. Courts generally do not consider typographical errors as a basis for invalidating an otherwise valid search warrant. *See Waker*, 463 F.Supp. 2d at 359-60 (citing *U.S. v. Turner*, 558 F.2d 46 (2nd Cir. 1977) which held that as long as the magistrate determined probable cause for the search and actually authorized the search warrant *before* the search, the failure of the magistrate to sign his name did not invalidate the search warrant) (emphasis added). "As long as the magistrate performed the substantive tasks of determining probable cause and authorized the issuance of the warrant, the Fourth Amendment is satisfied." *Turner*, 558 F.2d at 50.